UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

GLORIA POWERS,                                    )
                                                  )
        Plaintiff,                                )
                                                  )
             vs.                                  )        No. 1:15-CV-01835-SEB-MJD
                                                  )
CAROLYN COLVIN,                                   )
                                                  )
        Defendant.                                )

## REPORT AND RECOMMENDATION

Plaintiff Gloria Powers ("Powers") requests judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her application

for Social Security Disability Insurance ("DIB") under Title II and for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act ("the Act").[1]  *See* 42 U.S.C. §§

416(i), 423(d), 1382c(a)(3).  For the reasons set forth below, the Magistrate Judge recommends

that the District Judge **REVERSE** the decision of the Commissioner and **REMAND** the matter

for proceedings consistent with this opinion.

### I.  Background

Powers filed her application for DIB on January 6, 2012, [R. at 209], and for SSI on

January 24, 2012, [R. at 20], alleging October 11, 2011 as the onset date of disability, [R. at

209].  In her disability report filed in conjunction with her application, Powers listed depression,

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a
claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.
Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context
dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

Crohn's disease, asthma, and ovarian cysts as disabling conditions.[2]  [R. at 213.]  Powers's

applications were denied initially on June 25, 2012 and upon reconsideration on October 18,

2012.  [R. at 85–86, 87–88.]  Powers timely requested a hearing on her application, which was

held before Administrative Law Judge Mark C. Ziercher ("ALJ") on April 4, 2014.  [R. at 44.]

The ALJ issued his decision on May 29, 2014, again denying Powers's applications for DIB and

SSI.  [R. at 17.]  On September 24, 2015 the Appeals Council denied Powers's request to review

the ALJ's decision, making it the final decision of the Commissioner for the purposes of judicial

review.  [R. at 1-6.]  Powers timely filed her Complaint with this Court on November 20, 2015,

seeking judicial review of the Commissioner's decision.

## II.  Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. §

423.  Disability is defined as the "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ employs a five-step sequential

analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if

the claimant does not have a "severe" impairment, or one that significantly limits her ability to

perform basic work activities, she is not disabled; (3) if the claimant's impairment or

combination of impairments meets or medically equals any impairment appearing in the Listing

of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant

---

[2] Powers recited the relevant factual and medical background in her opening brief.  [*See* Dkt. 17.]  The Commissioner, unless otherwise noted herein, does not dispute these facts.  [*See* Dkt. 18.]  Because these facts involve Powers's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background the parties' briefs and articulate specific facts as needed below.

is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three and either cannot perform her past relevant work or has no past relevant work but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity (RFC), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work related activities. S.S.R. 96-8p, 1996 WL 374184.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.2d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not contain a complete written evaluation of every piece of evidence." *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala* 19 F.3d 329, 333 (7th Cir. 1997). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision. The ALJ must "provide some glimpse into his reasoning" and "build an accurate logical bridge from the evidence to his conclusion." *Dixon*, 270 F.3d at 1176. Scope of review is confined to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

3

### III.  The ALJ's Decision

In his decision, the ALJ first determined that Powers met the insured status requirements of the Act through December 31, 2013 and had not engaged in substantial gainful activity since October 11, 2011.  [R. at 22.]  At step two, the ALJ found Powers's severe impairments to include "abdominal pain, left knee problems status-post arthroscopy, and bilateral pes planovalgus with mild right ankle sprain."  [R. at 23 (capitalization altered).]  Though the ALJ discussed Powers's history of asthma and depression at step two, he found the asthma and depression not severe.  [R. at 23–25.]  At step three the ALJ found that Powers did not have an impairment or combination of impairments that meets or medically equals a Listing by evaluating Listing 5.00 for digestive system disorders and 1.02 for major dysfunction of a joint(s) disorders.  [R. at 26.]

At step four, "after careful consideration of the entire record," the ALJ determined that Powers had the RFC to perform "light work."  [R. at 26.]  Specifically, the ALJ found the following:

> [Powers] is limited to standing and/or walking for a total of 4 hours in an 8-hour workday, and sitting for up to a total of 6 hours in an 8-hour workday. She also requires a sit/stand option at least every 60 minutes to stand for up to 2 minutes without leaving the workstation. The claimant can frequently climb ramps and stairs; can occasionally climb ladders, ropes, and scaffolds; and can frequently balance, stoop, kneel, crouch, and crawl. She can understand, remember, and perform work tasks at GED Reasoning Level 03 (as defined in the Dictionary of Occupational Titles). The claimant can perform productive work tasks for up to an average of 98 to 100% of an 8-hour workday, not including the typical morning, lunch, and afternoon breaks. She can have occasional contact with the general public.

*Id.*  After making the RFC assessment, the ALJ found that Powers has no past relevant work for the purposes of the five step assessment.  *Id.*  After considering Powers's age, education, work experience, and RFC, the ALJ found that Powers could perform several jobs that existed in

significant numbers in the national economy.  [R. at 32–33.]  These jobs included gate attendant, small products assembler, circuit board assembler, and film touch-up inspector.  [R. at 33.]  Based on these findings, the ALJ concluded Powers was not disabled under the Act.  *Id*.

## IV.  Discussion

Powers makes three arguments as to why the decision of the Commissioner should be reversed.  First, Powers argues that the ALJ improperly evaluated her treating physician's opinion evidence.  Second, Powers argues that the ALJ inadequately addressed several of her physical impediments in the RFC.  Third, Powers argues that the ALJ improperly evaluated her mental limitations.  The Court addresses each argument in turn.

### A.  Treating Physician

First, Powers argues that the ALJ improperly gave little weight to Dr. Ryan Lacy's assessment of Powers's physical abilities.  Specifically, Powers contends that, as a treating physician, Dr. Lacy's evaluation of Powers's physical abilities deserved controlling weight.  Powers contends that the ALJ used improper legal standards and inadequately explained his decision to give Dr. Lacy's evaluation little weight.  Finally, Powers argues that the ALJ wrongly characterized Dr. Lacy's evaluation form.

In response, the Commissioner argues generally that the ALJ met his burden to "minimally articulate" his reasons for not granting Dr. Lacy's evaluation controlling weight.  Among the Commissioner's specific contentions in support of the ALJ's determination: Dr. Lacy's opinion dealt with matters reserved for the ALJ; the opinion was presented in a "check the box" format; the record does not support Dr. Lacy's evaluation; and Dr. Lacy's opinion was entirely based upon Powers's subjective allegations.

In reply, Powers argues that Dr. Lacy's evaluation represented his assessment of Powers's physical capabilities and did not reflect an opinion on disability. Powers reiterates that the ALJ improperly began his analysis of Dr. Lacy's evaluation without explaining why the evaluation was not entitled to controlling weight. Finally, Powers argues that the remainder of the Commissioner's arguments amount to post hoc rationalizations not relied upon by the ALJ, in violation of the *Chenery* doctrine. *See Chenery Corp.*, 318 U.S. at 93–95.

A treating physician's opinion is entitled to controlling weight if it is (1) well supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the record. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); 20 C.F.R. § 404.152(c)(2). However, a claimant "is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.' Under the Social Security regulations, the Commissioner is charged with determining the ultimate issue of disability." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). An RFC finding (for example, an opinion limiting a claimant to only "sedentary" work) is also such an ultimate issue left to the Commissioner. *Collins v. Astrue*, 324 Fed. App'x 516, 520 (7th Cir. 2009); 20 C.F.R. § 404.152(c)(2); S.S.R. 96-5p, 1996 WL 374183, at *4–5 (1994). Nonetheless, a physician's opinion on physical restrictions (for example, an opinion that a claimant has walking or sitting restrictions) notated in a "check the box" format is not automatically reflective of an opinion on an ultimate issue. As the Seventh Circuit has observed, "Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records," and it remains the ALJ's responsibility to explain the weight that such an opinion receives. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *see Collins*, 324 Fed. App'x at

520 (holding that treating physician's opinion about claimant's ability to sit was entitled to controlling weight absent "good reasons" for lower weight).

If the ALJ finds that the treating physician's opinion is not entitled to controlling weight, he must then consider several factors relating to the treatment history and opinion depth to determine the proper weight to give the treating physician's opinion. *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); 20 C.F.R. § 404.1527(d)(2). The ALJ must provide "'good reasons" for declining to grant a treating physician's opinion controlling weight and an explanation of the factors that support the ultimate weight determination. *Larson*, 615 F.3d at 749, 751; 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). The ALJ must "minimally articulate" these good reasons, *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008), but such minimal articulation must nonetheless be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," S.S.R. 96-2p, 1996 WL 374188, at *5. If an opinion fails to explain the weight given or "is so poorly articulated as to prevent meaningful review, a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal quotation omitted); *Roddy v. Astrue*, 705 F.3d 631, 636–37 (7th Cir. 2013).

Dr. Lacy, who had treated Powers for two years at the time of his evaluation, opined on a "check the box" form that Powers would require a variety of restrictions on standing, sitting, climbing, walking, pushing, and pulling that would preclude fulltime employment. [R. at 906–09.] In support, Dr. Lacy cited diagnoses of patellofemoral chondromalacia, arthritis of the knee, and pes planovalgus and noted Powers's use of braces and history of surgery. [R. at 907.] The record is rife with Dr. Lacy's observations from Powers's visits and it appears that Dr. Lacy had

access to Powers's medical history throughout.  [*E.g.*, R. at 660–63, 667, 669, 673–74, 686, 688, 690, 698–703.]

The ALJ's discussion of Dr. Lacy's physical evaluation—in its entirety—provided as follows:

> Assaying the medical source statements, Dr. Lacy is given little weight.  (See Exhibit 20 F).  First, a claimant's residual functional capacity is not a medical issue, but is an administrative finding that is reserved to the Commissioner of Social Security.  Accordingly, medical opinions expressed in this form can never be given controlling weight or special significance, even if it is given by a treating physician.  It is presented in a summary "check the block" with little to no meaningful rationale.  The doctor's treatment are generally unremarkable and do not support the opined exceptional functional limitations.  In opining with respect to the claimant's limitations, the terms "frequently" and "occasionally" are not defined on the form.  Because these terms are defined by regulation, they are terms of art.  There is nothing in the record that shows Dr. Lacy is familiar with the Social Security disability process and the undersigned declines to assume that he used the terms in a manner consistent with the Regulations.  Although he opines a cane is necessary, he does not address the assistive device anywhere in his treatment records.  Neither do his treatment records record instability, falling, or other clinical observations that support the need for a cane (20 CFR 404.1527(e) and 416.927(e); SSR 96-2p, SSR 96-5p).

[R. at 30.]

As Powers points out, the ALJ begins his analysis by concluding that Dr. Lacy's opinion warrants little weight, stating Dr. Lacy opined on an "administrative finding that is reserved to the Commissioner", and attacking the opinion for its "check the block" format.  [R. at 30.]  Here, Dr. Lacy limited his opinions to Powers's functionality, such as ability to stand, sit, and walk. Because Dr. Lacy's opinion on the severity of Powers's physical impediments did not reach an ultimate issue, the ALJ's statement that "medical opinions expressed in this form can never be given controlling weight" is legal error.  *See Larson*, 615 F.3d at 749–51 (reversing ALJ for rejecting treating physician's opinion on mental impairments' impact on ability to function with insufficient explanation); *Collins*, 324 Fed. App'x at 520 (noting that ALJ confused standard for

assessments of physical limitations with standard for administrative opinions where treating physician opined that claimant could not sit for more than four hours in a workday); *cf. Clifford*, 227 F.3d at 869–70 (holding that treating physician's opinion that claimant "was severely limited in her ability to perform any work requiring standing and walking" was entitled to controlling weight absent good reasons to the contrary).  Furthermore, to the extent the ALJ concluded that check-the-block opinions may "never be given controlling weight," that conclusion is legal error as well.  *See Larson*, 615 F.3d at 749–51.

Nonetheless, the ALJ's legal error may still be harmless if the ALJ applied the correct standard by giving "good reasons" for his determination that Dr. Lacy's opinion warranted little weight.  *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) ("[W]e will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same."); *see also Collins*, 324 Fed. App'x at 520–21 (examining whether ALJ gave sufficient explanation despite using incorrect legal standard to assess treating physician's opinion).

Powers assails the ALJ's observations about Dr. Lacy's assessment form, arguing that the ALJ wrongly concluded that "the terms 'frequently' and 'occasionally' are not defined on the form. . . . There is nothing in the record that shows Dr. Lacy is familiar with the Social Security disability process and the undersigned declines to assume that he used the terms in a manner consistent with the Regulations."  [R. at 30.]  The Commissioner does not seek to defend this factual conclusion and nor could she.  In fact, the ALJ had no need to "assume" that Dr. Lacy used the terms in a particular manner because the form itself states that "frequently" means ability to perform an action "from one-third to two-thirds of an 8-hour work day—cumulative, not continuous" and that "occasionally" means "from very little up to one-third of an 8-hour

work day—cumulative, not continuous."  [R. at 907.]  The ALJ's assessment of the form is

patently incorrect.

The Commissioner offers a variety of possible routes that the ALJ might have taken to

reach the conclusion that Dr. Lacy's assessment was not medically supported or was inconsistent

with other evidence, contending for example that Dr. Lacy's opinion was based "entirely on a

claimant's allegations" or that it was contrary to the record evidence.  [Dkt. 18 at 9.]  While such

reasons "may provide good cause to deny controlling weight to a treating physician's opinion,"

*Clifford*, 227 F.3d at 871, they are "not reasons that appear in the ALJ's opinion, and thus they

cannot be used here," *Larson*, 615 F.3d at 479 (citing *Chenery Corp*, 318 U.S. at 87–88).  The

case to which the Commissioner cites in support of her position is not to the contrary; in *Farrell*

*v. Sullivan*, it was the ALJ who determined that the physician's observations wholly reflected the

claimant's complaints.  878 F.2d 985, 989 (7th Cir. 1989) ("The ALJ also determined that Dr.

Zasadny's observations were mere recitations of Farrell's complaints . . . .").  Here, it is the

Commissioner—not the ALJ—offering this observation, which she may not do without running

afoul of the *Chenery* doctrine.

The only remaining justifications that the ALJ provided were that Dr. Lacy's opinion was

supported by "little to no meaningful rationale" and that his treatment records "are generally

unremarkable and do not support the opined exceptional functional limitations."  [R. at 30.]  As

the Commissioner points out, an ALJ is permitted to reject a treating physician's opinion if it is

unsupported by the medical records.  [R. at 8.]  But again it is the ALJ's responsibility to explain

his decision with "good reasons."  Here, the ALJ's perfunctory assessment of Dr. Lacy's

substantial treatment records falls short of this standard because it is "so poorly articulated as to

prevent meaningful review."  *Kastner*, 697 F.3d at 646; *Clifford*, 227 F.3d at 870 ("The ALJ did

10

not provide any explanation for his belief that Clifford's activities were inconsistent with Dr. Combs's opinion and his failure to do so constitutes error."); *Simpson v. Colvin*, No. 1:12-CV-00962-MJD, 2013 WL 3940626, at *4 (S.D. Ind. July 31, 2013) ("In this case, the ALJ stated that she granted each of these treating physicians' opinions 'little weight,' after determining that they were not supported by the record evidence, and/or inconsistent with Simpson's level of activities.  This statement is insufficient.").

Especially when the ALJ's perfunctory rejection of Dr. Lacy's treatment history is considered alongside the ALJ's factually and legally erroneous analysis of Dr. Lacy's assessment, it is impossible to conclude that the ALJ's weight determination is supported by substantial evidence.  *Collins*, 324 Fed. App'x at 521 ("Because the ALJ both applied an erroneous legal standard . . . and failed to articulate any good reason for significantly discounting Dr. Olson's medical opinion, his decision is not supported by substantial evidence.).  "Even if the ALJ had articulated good reasons for rejecting Dr. [Lacy's] opinion, it still would have been necessary to determine what weight was due under the applicable regulations."  *Larson*, 615 F.3d at 751 (citing 20 C.F.R. § 404.1527(d)(2)).  By beginning with the incorrect legal standard and compounding this error with factual error and minimal analysis, the ALJ failed to "build an accurate and logical bridge from the evidence to the conclusion."  *Clifford*, 227 F.3d at 872.  Therefore, the Court should reverse and remand the ALJ's disability determination for improperly assessing the treating physician's opinion.

## B.  RFC Assessment

Second, Powers argues that the ALJ's RFC determination is not supported by substantial evidence because it fails to account for her need to use a cane, her irritable bowel syndrome, and her need to elevate her leg.  At step three, the ALJ must determine a claimant's RFC, or "what an

11

individual can still do despite his or her limitations." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014); S.S.R. 96-8p.  The RFC is formulated by considering all medical and other relevant evidence of a claimant's severe and non-severe impairments in the record.  20 C.F.R. § 404.1545. *Arnett v. Astrue*, 676 F.3d 586, 591–92 (7th. Cir. 2012).  The ALJ may not ignore entire lines of evidence contrary to his opinion.  *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).  However, the ALJ's decision "need not contain a complete written evaluation of every piece of evidence," *McKinzey*, 641 F.3d at 891 (quoting *Schmidt v. Barnhart*, 395 F.3d at 744), and need only articulate an analysis of issues where "considerable evidence is presented to counter the agency's position," *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997) (internal quotation omitted).

The Court addresses each impairment in turn.

**1. Use of a Cane**

Powers argues that the ALJ incorrectly omitted the need for a cane from his RFC for two reasons.  First, Powers argues that the ALJ rejected a cane requirement due to the lack of a prescription in contravention of Seventh Circuit precedent.  *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).  Second, Powers argues that the ALJ additional analysis was insufficient given Dr. Lacy's opinion that Powers needed a "hand-held assistive device for ambulation."  [R. at 906.]

In response, the Commissioner argues that the ALJ did not rely upon the lack of a prescription but instead properly explained why he determined Powers did not require a cane.

In reply, Powers recites her medical record of foot and leg problems, arguing that these problems amply support a finding of medical necessity.

A cane, as with all medically required hand-held assistive devices, must be addressed in the RFC analysis. *Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013); *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012). As Social Security Ruling 96-9p explains,

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

1996 WL 374185, at *7. It is the claimant's burden to demonstrate that a cane is medically required. *Caster v. Colvin*, No. 1:15-cv-01859-JMS-MPB, 2016 WL 4206000, at *3 (S.D. Ind. Aug. 10, 2016) (citing 20 C.F.R. § 404.1512(a)). Even though a prescription may not be required for a cane to be medically required, *Parker*, 597 F.3d at 922, the claimant must provide specific, unambiguous evidence of the circumstances in which the cane is medically necessary, *Tripp*, 489 F. App'x at 955 (citing Spaulding v. Astrue, 379 Fed. App'x 776, 780 (10th Cir. 2010) (provision of cane to claimant by Veterans Administration medical service at physician's request did not satisfy medical necessity standard); Staples v. Astrue, 329 Fed. App'x 189, 191–92 (10th Cir.2009) (doctor's statement that claimant "uses a cane to walk" did not establish medical necessity); *Howze v. Barnhart*, 53 Fed. App'x 218, 222 (3d Cir. 2002) (concluding that doctor's reference to "script" for cane and checking box on printed form corresponding to statement that "hand-held assistive device medically required for ambulation" was insufficient to establish medical necessity)).

The Court need not decide whether the ALJ's statement about the necessity for a prescription is legal error under *Parker* (which did not mention S.S.R. 96-9p) because, as the ALJ sufficiently explains, Powers failed to demonstrate that her cane was medically necessary. *See Schomas*, 732 F.3d at 707. The ALJ points out that, while Dr. Lacy checked the box on his

form to indicate that Powers needed a "hand-held assistive device for ambulation," nowhere in

Dr. Lacy's treatment history is Powers's need for a cane discussed.  While Powers in reply

recites a bevy of clinical observations that may support her claims of walking limitations and that

may in fact indicate some need for a cane, Powers fails to direct the Court to specific,

unambiguous evidence of the circumstances in which she requires a cane—"whether all the time,

periodically, or only in certain situations[,] distance[s] [or] terrain[s]"—as is her burden.  96-9p;

*Tripp*, 489 Fed. App'x at 955 (collecting cases).  Therefore, the ALJ decision not to include the

cane in the RFC is supported by substantial evidence, and the Court should not reverse the ALJ's

disability determination on this ground.

### 2.  Irritable Bowel Syndrome

Powers next argues that the ALJ erred in his credibility determination by failing to

include limitations from her irritable bowel syndrome in the RFC.  Powers argues that the ALJ

failed to address her irritable bowel syndrome diagnoses and, citing to an Internet site, maintains

that "there are usually no physical signs to definitively diagnose IBS[;] diagnosis is often a

process of ruling out other conditions."  [Dkt. 17 at 28 (internal quotations omitted).]

In response, the Commissioner argues that the ALJ gave sufficient consideration to the

medical evidence in his RFC determination.  In reply, Powers reiterates her arguments that the

ALJ needed to address the diagnosis and argues that the Commissioner's rationale violates the

*Chenery* doctrine.

An ALJ's credibility determination must be upheld if it is "reasoned and supported," and

may only be overturned if it is "patently wrong."  *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir.

2008).  A determination is patently wrong if it "lacks and explanation or support."  *Id.*

14

In determining that Powers's gastrointestinal complaints were not entirely credible, the ALJ cited to multiple clinical findings from examinations where Powers's bowel was found to be "normal," [R. at 28 (citing R. at 335, 705, 880, 887)], as well as to a doctor who observed after a CT scan that there was "no clear explanation of abdominal pain seen," [*id.* (citing R. at 299)]. "Even if plaintiff is correct that irritable bowel syndrome is akin to fibromyalgia and other disorders for which there are no objective tests, the ALJ was entitled" to consider the conflicting medical evidence in the record. *Brueggen v. Barnhart*, No. 06-C-0154-C, 2006 WL 5999614, at *6 (W.D. Wis. Dec. 15, 2006) (citing *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995); 20 C.F.R. § 404.1529(c)). While the ALJ did not engage in an exemplary discussion of Powers's gastrointestinal ailments, including what appears to be at least one physician's diagnosis of irritable bowel syndrome, [R. at 876], the ALJ did support his conclusion with a discussion of ample objective medical evidence that contradicts this diagnosis. Therefore, the ALJ's determination is not devoid of "explanation or support." *Elder*, 529 F.3d at 413 ("It is the responsibility of the ALJ, not of a reviewing court, to resolve conflicting evidence and to make credibility determinations." (internal quotations omitted)). Even though the Court should not find that the ALJ's credibility assessment constitutes reversible error, the ALJ should consider on remand how the considerable evidence of gastrointestinal distress to which Powers cites might impact her ability to work.

### 3.  Leg Elevation

Powers argues that the ALJ erred in failing to address or incorporate requirements on a need for leg elevation, pointing to two opinions suggesting that Powers elevate her leg. The Commissioner responds that the evidence was so scant that there was no need to address such

requirements.  Powers in reply argues that the Powers does in fact need to elevate her legs and that the Commissioner's rationale runs afoul of the *Chenery* doctrine.[3]

Here, Powers's one-paragraph argument points to no evidence that the ALJ should have considered because, as the Commissioner points out, the two opinions do not establish a regular need for leg elevation.  Both opinions immediately followed, and were directly related to, recovery from particular conditions.  [R. at 637 (noting that Powers was following up for removal of stitches two weeks after knee surgery); R. at 629 (noting that Powers suffered an ankle injury two days prior to appointment).]  Because the medical evidence of a need for leg elevation provides no support for an alternative RFC finding, the ALJ did not error in failing to discuss this evidence.  *Nelson*, 131 F.3d at 1237 (requiring that the claimant present "considerable evidence" of condition before ALJ must provide analysis); *see Schomas*, 732 F.3d at 707 ("[W]e will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same.").  Therefore, the Court should not reverse the ALJ's disability determination on this ground.

### C.  Mental Impairments

Finally, Powers argues that the ALJ failed to properly evaluate her mental impairments and limitations.  Powers lodges three arguments to support her position: first, the ALJ failed to incorporate Powers's reading limitations into the RFC; second, the ALJ insufficiently addressed Powers's mental limitations; and third, the ALJ failed to address whether Powers's impairments met or equaled Listing 12.05C, 20 C.F.R. Pt. 404, Subpt. P, App. 1.

---

[3] Powers in her reply brief additionally points to Powers's testimony at the hearing in support of a need to elevate her legs, but "arguments raised for the first time in a reply brief are waived."  *United States v. Hughes*, 970 F.2d at 227, 235 n.6 (7th Cir. 1992) (internal quotation and alteration omitted).

As with all of the ALJ's evidentiary findings, the Court must defer to the ALJ's determination of a claimant's mental impairments as long it is supported by substantial evidence that a reasonable person would accept as adequate. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The Court addresses each argument in turn.

### 1. Reading Limitations

Powers argues that the ALJ was required to incorporate Powers's reading difficulties in the vocational expert's hypothetical. The Commissioner does not specifically respond to this argument. Powers reiterates her argument in reply.

The ALJ is required to consider a claimant's education and work experience, 20 C.F.R. § 404.0560(c), which includes literacy and length of education, *id.* § 404.1564(b). As the Social Security regulations explain, "Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 404.1564(b)(1). The Seventh Circuit has explained that a determination of illiteracy is a "highly fact bound question"; a claimant "need only be able to read and write well enough to be able to hold simple, unskilled jobs." *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987) (upholding the ALJ's determination that the claimant was literate despite the fact that the ALJ did not elaborate upon this finding). A vocational expert must take illiteracy into account, though

> [f]or a person who is 44 years old or younger . . . , illiteracy does not require a finding of disability. The Social Security regulations state that for persons in this age category, illiteracy generally does not substantially erode available unskilled work because "the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy . . . has the least significance."

*Treat v. Colvin*, No. 1:13-CV-0002-SEB-DML, 2014 WL 1256006, at *7 (S.D. Ind. Mar. 25, 2014) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(i)).

Here, the ALJ failed to address literacy at all, and the Commissioner has not responded to the argument that Powers may be illiterate.  This argument finds considerable support in the record.  [*E.g.*, R. at 571 (noting that Powers reads at a third-grade level), 908 (indicating that Powers cannot read or spell).]  The Court notes that Powers is under 45 years of age, so a finding of illiteracy would not mean that Powers is automatically disabled under the regulations.  Nonetheless, the ALJ should make a literacy determination on remand and ensure that any such limitations are incorporated in the vocational expert's hypothetical.  20 C.F.R. §§ 404.0560(c), 404.1564(b).

### 2.  Mental Impairments

Powers argues that the ALJ insufficiently addressed Powers's mental limitations, specifically attacking two aspects of the ALJ's mental RFC determination.

First, Powers argues that the ALJ improperly disregarded Dr. Rasmussen's assessment that her "functional mental capacity appears to be moderately impaired" and that she "may have trouble getting along with others."  [R. at 290.]  The Commissioner responds that Dr. Rasmussen never diagnosed Powers with an "intellectual disability" and that, to the extent Dr. Rasmussen determined that Powers was "moderately impaired" the ALJ appropriately accommodated any impairment.  Powers reiterates the same arguments in reply.

As the Commissioner points out—and Powers does not contest—the ALJ appears to accommodate Dr. Rasmussen's opinion by limiting Powers to no more than "occasional contact with the public."  [R. at 26.]  Moreover, Powers does not argue that the ALJ should have done more to accommodate this opinion, instead arguing that the ALJ gave impermissible reasons for

the "weight" given to the opinion.  Since, however, the ALJ did in fact incorporate restrictions that reflect Dr. Rasmussen's evaluation, the ALJ's determination with respect to Dr. Rasmussen is supported by substantial evidence.[4]  *See  Schmidt v. Astrue*, 496 F.3d 833, 844–45 (7th Cir. 2007) ("The ALJ also limited Schmidt's work to jobs not involving high production goals, thus giving some credibility to Schmidt's stress claims. We therefore find substantial evidence supporting the ALJ's determination of Schmidt's mental residual functional capacity.").

Second, Powers makes a general attack on the ALJ's consideration of the evidence of mental illness, arguing that the ALJ "cherry-picks" evidence of Powers's recovery while ignoring evidence of continued depression.  The Commissioner does not respond specifically to the argument, generally asserting that the ALJ's analysis and accommodation were sufficient. Powers reiterates her arguments in reply.

The Court agrees that the ALJ unduly relied upon evidence of Powers's improvement when assessing her depression, likely reflecting the common lack of understanding that "a person who suffers from a mental illness will have better days and worse days."  *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); [*see, e.g.* R. at 541–42 (increasing prescription dosage), 905 (same)].  However, unlike in *Punzio*, the case relied upon by Powers, where the ALJ disregarded the opinion of a treating psychiatrist whose opinion would have compelled a finding of disability if it had been credited, Powers does not explain how any further consideration of Powers's depression would have impacted her RFC.  Nor does Powers contend that the ALJ's accommodation for public contact is insufficient.  *See Schmidt*, 496 F.3d at 844–45.  Therefore,

---

[4] The Court agrees with Powers that the ALJ's explanation that Dr. Rasmussen's "report suggests that most of the claimant's issues were related to her physical health, as opposed to her mental impairment" is unsupported lay opinion of medical evidence.  *See Clifford*, 227 F.3d at 870.  As explained above, however, because Powers does not contest the Commissioner's argument that the restriction imposed adequately reflects Dr. Rasmussen's opinion, any error is harmless.  *See Schomas*, 732 F.3d at 707.

while the Court should not reverse the ALJ's disability determination on this ground, the ALJ on remand should consider the ongoing fluctuation in Powers's symptoms when analyzing her depression.

### 3. Listing 12.05C

Powers concludes by briefly arguing that the ALJ erred by not obtaining an IQ test to determine whether Powers meets Listing 12.05C for intellectual disability. 20 C.F.R. Pt. 404, Subpt. P, App. 1. The Commissioner does not specifically respond to this argument and instead rests on her general argument that the ALJ's determinations were sufficient.

Listing 12.05C imposes four requirements for a claimant to be found disabled due to intellectual disability: "(1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning initially manifested during the developmental period before age 22; (3) a valid verbal, performance, or full scale IQ of sixty through seventy; and (4) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Adkins v. Astrue*, 226 F. App'x 600, 605 (7th Cir. 2007). The second requirement, deficits in adaptive functioning, "denotes inability to cope with the challenges of ordinary everyday life." *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007). Though an ALJ does have a "duty to develop a full and fair record," *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009), where a claimant "is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits," *Glenn*, 814 F.2d at 391. "This court generally upholds the reasoned judgment of the Commissioner on how much evidence to gather, even when the claimant lacks representation." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).

Powers was represented and had an opportunity to offer IQ exam results into the record; she fails to demonstrate that the need was so obvious as to require the ALJ to do so given the

evidence (provided by Dr. Rasmussen, among others) that Powers's mental limitations were "moderate." [*E.g.*, R. at 290.]  Therefore, the Court should not reverse the ALJ's disability determination for the ALJ's failure to order an IQ exam.

## V.   Conclusion

For the aforementioned reasons, the Court should find that substantial evidence does not support the ALJ's determination that Powers is not disabled.[5]   The District Judge should therefore **REVERSE** and **REMAND** the matter to the Social Security Administration for further proceedings.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  25 AUG 2016

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.

---

[5] However, nothing in this opinion should be interpreted by the Commissioner to suggest that Powers is, in fact, entitled to DIB or SSI benefits.

21